IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JEROME WELLS, | ) | CASE NO. 1:08-cv-03007 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| GERALD MCFAUL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |

This case is before the Magistrate Judge by consent of the parties.  Before the Court is defendant's Motion for Summary Judgment.  (Doc. # 23).  For the reasons given below, defendant's Motion for Summary Judgment is GRANTED.

### I.  Procedural Background

Plaintiff Jerome Wells ("Wells") was incarcerated in the Cuyahoga County Jail ("County Jail") between October 2007 and September 2008, awaiting trial on rape charges.  (Affidavit of Kevin McDonough ("McDonough Aff.") ¶¶ 8-9 attached to defendant's Motion for Summary Judgment as Exhibit A.)

On December 24, 2008, Wells filed a Complaint against Cuyahoga County Sheriff McFaul and various employees challenging numerous conditions of his confinement in the County Jail.  (Doc. # 1).  On March 4, 2009, Judge Gwin dismissed all of Wells's claims except his excessive force claim against defendant Randy Pritchett ("Pritchett"), a Cuyahoga County corrections officer ("CO").  (Doc. # 3).  On April 24,

2009, Judge Gwin referred the matter to Magistrate Judge Vecchiarelli, pursuant to the consent of the parties. (Doc. # 12).

In his Complaint, Wells's remaining claim alleges that CO Pritchett used excessive force against him when CO Pritchett handcuffed Wells and removed him from his cell after an incident involving delivery of a food tray. On October 5, 2009, CO Pritchett filed a Motion for Summary Judgment. (Doc. # 23). CO Pritchett argues that he is entitled to summary judgment because the undisputed facts do not establish a constitutional violation. Alternatively, CO Pritchett argues that he is entitled to summary judgment based on the defense of qualified immunity. Wells opposes CO Pritchett's Motion for Summary Judgment. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Brief in Opposition") (Doc. # 26)).

## II. Factual Background[1]

In May 2008, Wells was diagnosed with diabetes. (Physician's Order Form attached to defendant's Motion for Summary Judgment as Exhibit C). Pursuant to physician's orders, Wells was to receive a diabetic food tray. (Exhibit C). A diabetic food tray differs from a nondiabetic food tray in that the diabetic tray contains sugar substitute and wheat bread. ( Deposition of Randy Pritchett ("Pritchett depo.") p. 29 attached to defendant's Motion for Summary Judgment as Exhibit E).

On June 23, 2008, CO Warren Bradley conducted dinner service at Wells's pod. (Deposition of Jerome Wells ("Wells depo.") (Doc.# 24) p. 54). CO Pritchett and

---

[1] Defendant states that solely for the purposes of his Motion for Summary Judgment, he accepts the facts as alleged by plaintiff. However, defendant asserts that he never entered plaintiff's cell, and that he never had any physical contact with plaintiff. (Defendant's Motion for Summary Judgment p. 3, n.1.).

2

certain inmates assisted CO Bradley in passing out the dinner trays. (Wells depo. p. 54). Wells testified that an inmate gave him his food tray, which Wells noted was not a diabetic food tray. Wells told the inmate that the tray was not a diabetic food tray, and Wells assumes the inmate told CO Pritchett. (Wells depo. p. 54-55). Wells testified that CO Pritchett then approached Wells's cell with the food tray and asked Wells if he were refusing the tray. (Wells depo. p. 55). Wells testified that he told CO Pritchett that he was not refusing the tray, but it was not a diabetic tray. (Wells depo. p. 55). Wells alleges that CO Pritchett then yelled "mother fucker" and slammed the tray on the floor causing hot dogs and mustard to go everywhere. (Wells depo. p. 55).

Wells further alleges that CO Pritchett then entered his cell and ordered him to put his hands on the wall. Wells testified as follows:

> Officer Pritchard [sic] told Officer Bradley to open this mother fucking door. Officer Bradley opened the door and told me to get up against the wall. I walked over to the wall, put my hands up on the wall, and he slammed me up against the wall. I said, man, why are you treating me like this? Why are you doing this to me?
> He snaps my hand–arms back, put the handcuffs on me. Snaps my other arm back while he's pushing me up against the wall, and turns me around and pushed me towards the door. While he was pushing me, he was holding my arm.
> When we got out the door, because only one person can go out the door, and he still had my arm. And mustard was all on the floor and everything right there. I slipped some kind of way and he jerked my arm. He jerked my arm, and something popped in my shoulder here, and I felt pain in my neck and shoulder here on my right side, and I hit the ground.
> I rolled over, and he kind of helped me up, and he proceeded to push me out into the hallway and pushed me up against the wall and told me to stand right there... .

(Wells depo. p. 55-56).

Wells further testified:

3

> He used his hand to push me up against the wall. I already had my hands up. He pushed me with his forehand and grabbed my arm and forced me—pulled me down, pulled my arms down from behind my back.
>
> \*\*\*
>
> [H]e was pushing by my arm, then when I slipped he, I guess, was trying to catch me or pull me, you know, and he was pulling me and just hurt my arm, you know. I was like this, and he was snapping my shoulder here.
>
> \*\*\*
>
> I hit the ground.... And I fell on this shoulder. I didn't fall on this side. I fell on this shoulder because he had me on my left shoulder.
>
> \*\*\*
>
> My right shoulder was injured and my neck. That's where I felt the pain anyway. That's where I'm still having pain, you know.

(Wells depo. 57-58).

After the incident, Corporal Guy Holt ("Holt") spoke with Wells. Wells explained that he refused the tray because it did not contain wheat bread. Holt told Wells that if his tray does not contain what it should, he should request to see a corporal and not cause a disturbance. Holt was aware that Wells had caused a previous disturbance over his food and had been warned against causing a disturbance. Holt recommended that Wells be placed on disciplinary isolation for the rest of the evening. (Affidavit of Guy Holt ("Holt Aff.") ¶¶ 4-8 attached to defendant's Motion for Summary Judgment as Exhibit H).

Holt testified that during his conversation with Wells, Wells did not report that CO Pritchett entered his cell or had any physical contact with him. Holt further testified that Wells did not report any injuries to Holt, nor did Holt observe any injuries on Wells. Holt prepared a pod log entry and disciplinary report after meeting with Wells. Neither

4

report contains any reference to physical force or injury. (Holt Aff. ¶¶ 10-12).

Wells did not request medical attention after the incident. (Wells depo. p. 36, 58, Holt Aff. ¶ 14). However, approximately 30 minutes after the incident, Wells was called to the medical pod for follow up on laboratory tests related to his diabetes. (Holt Aff. ¶ 14, Wells depo. p.36, 58). Wells testified that he told the doctor about the incident, and that she examined his neck and shoulder. (Wells depo. p. 58-59). Wells stated that the doctor wrote down his complaints, but told him there was nothing she could do for him. Wells testified that the doctor did not prescribe any medication at that time, but told him to use a hot pad if he had problems. (Wells depo. p.58-60). Wells testified that he began taking pain medication sometime after he saw the doctor.

> Did she give you pain medication?
>
> I'm sure she gave me some, but I don't know – I don't know – I know she didn't give me none right then. She didn't give me any pain medication. I don't know if– I started taking it after I was in the isolation unit. That's when I started taking pain medication.[2]

(Wells depo. p. 59).

The nurse's notes from that date indicate that Wells complained of shoulder pain. (Medical Records attached to Defendant's Motion for Summary Judgment as Exhibit I, p.1). However, the doctor's notes do not; nor do the doctor's notes indicate

---

[2]In his Brief in Opposition, Wells states that he testified that he sought medical attention on the day of the incident and that he was prescribed pain medication for his neck and shoulder. (Brief in Opposition p. 3). The deposition testimony does not support Wells's allegations. As stated, Wells testified that he told the doctor about his injuries after he was called to the medical pod for another reason. He did not request to go to the medical pod to be treated for his alleged injuries. Wells further testified that the doctor did not prescribe pain medication for him at that time, as plaintiff suggests in his Brief in Opposition. Rather, Wells testified that he began taking pain medication after he was in isolation.

5

that the doctor examined Wells's shoulder, or advised him to use a hot pad. *Id.* The notes do indicate that Wells told the doctor that he was not getting wheat bread, and that he had an altercation with CO Pritchett because of this. *Id.* The medical records further indicate that Wells presented to the doctor 10 times after the incident, including the next day, but never complained of shoulder pain. (Medical Records attached to defendant's Motion for Summary Judgment as Exhibit I p. 2-13). Wells does not dispute this.

Wells testified at his deposition that he was still having pain. (Wells depo. p. 60). He also alleges in his Brief in Opposition that he has lost some functional use of his right arm as a proximate result of the injuries he sustained in the altercation with Pritchett. (Brief in Opposition p. 3). Based on the deposition testimony Wells cites in his brief, he is referring to experiencing increased pain when he stretches his right arm and having to limit the amount of pressure he puts on his right arm when he works out. (Wells depo. p. 62-63).

### III. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

6

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995). The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *Id.*, or by any other evidentiary material admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998). Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962). In addition, the

7

Court "does not weigh the evidence or make credibility determinations." *Id.*  However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

### IV. Defendant's Qualified Immunity Defense

Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  To determine the applicability of the qualified immunity defense, the court, viewing the facts most favorably to the plaintiff must determine whether the defendant violated a constitutional right that was clearly established at the time of the defendant's misconduct*. Pearson v. Callahan*, 129 S Ct. 808 (2009); *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Silberstein v. City of Dayton*, 40 F. 3d 306, 311 (6th Cir. 2006).  If the evidence does not establish a Constitutional violation, then defendant is entitled to summary judgment. *Saucier,* 533 U.S. 201.

At the time of the incident, Wells was a pretrial detainee.  Therefore, his excessive force claim is brought under the fourteenth amendment due process clause which, "protects a pretrial detainee form the use of excessive force that amounts to punishment.*" Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2007)   The Sixth

8

Circuit has not determined the exact level of constitutional protection against excessive force afforded a pretrial detainee under the fourteenth amendment. *Leary*, 528 F. 3d at 443 ("While there is room for debate over whether the Due Process Clause grants pretrial detainees more protection than the Eighth Amendment does...we need not resolve that debate here."). However, a pretrial detainee retains at least those constitutional rights afforded a convicted prisoner. *Bell v. Wolfish*, 411 U.S.520, 545 (1979). Therefore, "the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts v. City of Troy*, 773 F.2d 720,723 (6th Cir.1985) citing *Norris v. Frame*, 585 F.2d 1183, 1187 (3d Cir.1978).

To establish a claim for excessive force under the fourteenth amendment, a plaintiff must satisfy both an objective and subjective element. *Hudson v. McMillian*, 503 U.S.1 (1992). Regarding the objective element, the plaintiff must establish that, "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8 (citations omitted). The plaintiff need not have suffered a significant injury to establish an excessive force claim provided the amount of force used is more than *de minimis,* and involves the sort of force "repugnant to the conscience of mankind." *Id.* at 9.

To establish the subjective element, the plaintiff must establish that the defendant acted with a sufficiently culpable state of mind. *Hudson,* 503 U.S. 8. In making this determination, "[T]he core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

9

cause harm." *Johnson v. Perry*, 106 Fed.Appx. 467, 469 (6th Cir. 2004) citing *Hudson, 503 U.S. 7*. To determine motivation the court should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury. *Caldwell v. Moore*, 968 F.2d 595, 600 citing *Whitley v. Albers*, 475 U.S. 312, 320-22 (1986).

In the instant case, Wells argues that CO Pritchett used excessive force in violation of the fourteenth amendment when he smashed Wells against the wall of his cell and roughly handcuffed him. Wells further argues in his brief that he was injured as the result of CO Pritchett's actions. Wells contends that, "A reasonable jury could conclude that the proximate cause of Plaintiff's injury was Plaintiff being 'slammed ...up against the wall' and having his hands and arms 'snapped back' by defendant." (Brief in Opposition p. 8).

Despite these arguments, Wells has not presented any evidence to support his conclusory allegation that he was injured when he was slammed against the wall and handcuffed. The deposition testimony cited by Wells (Wells depo. p.56-58 cited *supra* at 3-4) does not support Wells's argument, but rather supports the contention that Wells was injured when he slipped exiting the cell, and CO Pritchett caught him or pulled him.

> When we got out the door, because only one person can go out the door, and he still had my arm. And mustard was all on the floor and everything right there. I slipped some kind of way and he jerked my arm. He jerked my arm, and something popped in my shoulder here, and I felt pain in my neck and shoulder here on my right side, and I hit the ground.

(Wells depo. p. 56).

Additionally, Wells has failed to present any medical evidence of causation. His

10

arguments in his brief that his injuries were caused by being slammed against the wall and roughly handcuffed are speculative.

While a significant injury is not required to establish a constitutional violation, the significance of the injury is a factor that may suggest the level of force used. *Hudson v. McMillian* 503 U.S. 1, 7 (1992).

> [A]bsence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.... This analysis "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing." *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir.1986); see also *Williams*, 981 F.2d at 906 ("[A]ll the facts and circumstances surrounding the application of force must be scrutinized and weighed.").

*Lockett v. Suardini*, 526 F. 3d 866, 875 (6th Cir. 2008) (some citations omitted).

The Sixth Circuit has recognized that, "in the prison context, good faith use of physical force may be necessary to maintain prison security and discipline. " *Williams v. Browman*, 981 F. 2d 901, 905 (6th Cir. 1992). Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of judge's chambers, violates a prisoner's constitutional rights." *Williams v. Browman*, 981 F. 2d 901, 905 (6th Cir. 1992).

The undisputed facts in this case establish that the alleged use of force was *de minimis*. Wells has presented no evidence that he was injured as the result of being slammed against the wall and handcuffed. Causation in this context is not readily apparent. The evidence presented is not sufficient for any reasonable jury to conclude that Wells's injuries were caused when he was handcuffed. Moreover, Wells has failed to establish that CO Pritchett acted maliciously and sadistically to cause harm and that

11

his use of force was anything beyond the good faith use of force necessary to maintain prison discipline and security by handcuffing a prisoner before removing him from his cell.[3]

Wells argues that it was not necessary for CO Pritchett to remove Wells from his cell; and therefore, his actions constituted excessive force amounting to punishment. However, that is not the legal test.  That CO Pritchett may have had an alternative course of action does not render his use of force excessive; nor does it establish that CO Pritchett acted with a sufficiently culpable state of mind, *i.e.* to maliciously and sadistically cause harm.  Similarly, throwing a tray and swearing at Wells does not evidence an intent to punish Wells in violation of the fourteen amendment.  While CO Pritchett's actions, as alleged by Wells, may have been inappropriate, or may be questioned, no reasonable jury could conclude that his actions involved the use of force 'repugnant to the conscience of mankind'.  Accordingly, Wells has failed to establish a claim for excessive force in violation of the fourteenth amendment.

Because Wells has failed to establish a constitutional violation, the Court need not determine whether the constitutional right was clearly established at the time of the incident.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *Pearson v. Callahan,* 129 S. Ct. 808 (2009).

---

[3]*See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("[N]ot...every malevolent touch by a prison guard gives rise to a federal cause of action....The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of force provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (citations omitted).

## V.  Conclusion

For the foregoing reasons, defendant is entitled to summary judgment on the basis of qualified immunity.  Accordingly, Defendant's Motion for Summary Judgment (Doc.# 23) is GRANTED.

**IT IS SO ORDERED.**

Date:  December 16, 2009           /s/ *Nancy A. Vecchiarelli*
                                   NANCY A. VECCHIARELLI
                                   United States Magistrate Judge